UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERIC SMALL, | ) | Case No. 2:10-CV-3026-JAM-GGH |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| v. | ) | MOTION TO DISMISS, AND DENYING |
| | ) | DEFENDANTS' MOTION TO STRIKE |
| FEATHER RIVER COLLEGE, MERLE | ) | |
| TRUEBLOOD, and JAMES JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' Feather River Community College District (erroneously sued as Feather River College), Merle Trueblood and James Johnson's (collectively "Defendants") Motion to Dismiss (Doc. #14) and Motion to Strike (Doc. #15) Plaintiff Eric Small's ("Plaintiff") First Amended Complaint ("FAC") (Doc. #12). Defendants move to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and move to strike portions of the FAC pursuant to Rule 12(f). Plaintiff opposes both motions (Docs. #19 and #20). These matters were set for hearing on March 9, 2011, and ordered

1

submitted on the briefs.[1]  For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part, and the motion to strike is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked at Feather River College ("FRC") from approximately 2005 to 2010.  During this time, Plaintiff worked as an assistant football coach, and as an academic advisor.  The FAC alleges that Plaintiff's job was classified as "Assistant Football Coach/Instructional Assistant" and that he was the only permanent, full-time employee in the football department, besides the Head Coach.  He was provided business cards by FRC, which allegedly identified him as "Associate Head Football Coach."  During the time Plaintiff was at FRC, there were four Head Coaches: Coach Simi, Coach White ("White"), Coach Mooshagian ("Mooshagian"), and interim Head Coach Johnson ("Johnson").  The FAC further alleges that Plaintiff did extensive recruiting for FRC's football program, primarily recruiting African American football players from the South.  Plaintiff alleges he created a "win-win" situation, in which FRC had a successful football team and fully filled dorms, while players benefitted from Plaintiff's dedication and extensive network, resulting in nearly all recruits moving on to scholarships at four-year colleges after finishing at FRC.  However, Plaintiff alleges that he and his African American recruits faced racial hostility and discrimination from the community at-large and from other coaching staff.  Plaintiff alleges he was passed up for

---

[1] These motions were determined to suitable for decision without oral argument. E.D. Cal. L.R. 230(g).

promotion to Head Coach despite his qualifications, and was retaliated against for complaining about discriminatory treatment towards himself and his recruits. When Plaintiff eventually left his job in the fall of 2010, he alleges he was constructively discharged due to a situation of racially motivated hostility that had become intolerable. The FAC alleges that Johnson was particularly hostile towards Plaintiff and African American student athletes, and that defendant Merle Trueblood ("Trueblood"), FRC's Athletic Director, supported Johnson in forcing out Plaintiff and changing the composition of the football team from predominantly African American to predominantly white.

Defendants move to dismiss Plaintiff's claims, alleging that Plaintiff has not plead facts to support his allegations that the conduct complained of was motivated by his race, has not plead that he suffered an adverse employment action, and has not put forth facts demonstrating that he engaged in a protected activity. Accordingly, Defendants move the Court to dismiss all claims in the FAC with prejudice, for failure to state a claim.

II.  OPINION

A.   Legal Standard-Motion to Dismiss

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1975), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319,

322 (1972).  Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Absent prejudice, or a strong showing of any [other relevant] factor[], there exists a presumption under Rule 15(a) in favor of granting leave to amend."  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Id.

B.   Request for Judicial Notice

Defendants request judicial notice (Doc. #14-2) of the minutes of the Feather River Community College Board of Trustees meeting dated September 25, 2008, consent agenda dated September 27, 2008, and employment offer letter to Plaintiff dated September 27, 2008. Plaintiff objects to Defendants' request for judicial notice. Generally, the court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. There are two exceptions: when material is attached to the

complaint or relied on by the complaint, or when the court takes
judicial notice of matters of public record, provided the facts are
not subject to reasonable dispute.  Sherman v. Stryker Corp., 2009
WL 2241664 at *2 (C.D. Cal. Mar. 30, 2009) (internal citations
omitted).  Accordingly, Courts may consider extrinsic evidence when
"plaintiff's claim depends on the contents of a document, the
defendant attaches the document to its motion to dismiss, and the
parties do not dispute the authenticity of the document. . . ."
Knievel v. ESPN, 393 F.3d 1069, 1076 (9th Cir. 2005).  Defendants
argue that the documents are matters of public record, establish
Plaintiff's job title and show that Plaintiff was not demoted.
However, Plaintiff objects that the board minutes do not describe
Plaintiff or his job title, the consent agenda does not state
Plaintiff's job title, and the offer of employment, which does
state Plaintiff's job title, is not public record and therefore is
not appropriate for judicial notice.  The Court finds that the
meeting minutes and consent agenda are not relevant to establishing
Plaintiff's job title or determining whether he was demoted.  The
letter offering employment to the Plaintiff is not an appropriate
document for judicial notice because it is not a matter of public
record.  Accordingly, the Court will not consider these documents
in ruling on the motion to dismiss, and DENIES Defendants' request
for judicial notice.

    C.   Claims for Relief

        1. First Claim for Relief: Constructive Discharge, 42
U.S.C. § 1981

    Plaintiff brings a claim of constructive discharge under
Section 1981 against defendants Trueblood and Johnson, alleging

that he was constructively forced out of his employment when, after

complaining of protected activity his working conditions became

intolerable.  Defendants argue that Plaintiff's allegations are not

sufficient to state a claim for constructive discharge.

> 42 U.S.C. § 1981 provides that all persons
> shall have the same right . . . to make and
> enforce contracts . . . . as is enjoyed by white
> citizens.  The statute defines, make and
> enforce contracts to include the making,
> performance, modification and termination of
> contract, and the enjoyment of all benefits,
> privileges, terms and conditions of the
> contractual relationship.

Flores v. Von Kleist, 739 F.Supp.2d 1236, 1256 (E.D. Cal. 2010)

(internal citations omitted).  The legal principles guiding a

court's analysis of a Title VII claim apply with equal force in a

Section 1981 claim.  Jackson v. ABC Nissan, Inc., 2006 WL 2256908,

FN9 (D. Ariz. 2006), citing Manatt v. Bank of America, NA, 339 F.3d

792, 797 (9th Cir. 2003).

"Under the constructive discharge doctrine, an employee's

reasonable decision to resign because of unendurable working

conditions is assimilated to a formal discharge for remedial

purposes.  The inquiry is objective: Did working conditions become

so intolerable that a reasonable person in the employee's position

would have felt compelled to resign?"  Poland v. Chertoff, 494 F.3d

1174, 1184 (9th Cir. 2007).  Constructive discharge occurs when the

working conditions deteriorate, as a result of discrimination, to

the point that they become sufficiently extraordinary and egregious

to overcome the normal motivation of a competent, diligent, and

reasonable employee to remain on the job to earn a livelihood and

to serve his or her employer."  Id.  The Ninth Circuit does not

require a plaintiff to establish that his employer created the

1  intolerable conditions with the intent to cause the employee to

2  resign.  Id. at FN 7.  In general, a single isolated instance of

3  employment discrimination is insufficient as a matter of law to

4  support a finding of constructive discharge.  See Nolan v.

5  Cleveland, 6986 F.2d 806, 812 (9th Cir. 1982).  Hence, a plaintiff

6  alleging a constructive discharge must show some aggravating

7  factors, such as a continuous pattern of discriminatory treatment.

8  Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir. 1984).

9       Plaintiff has alleged that in 2010, Johnson made the decision

10  to exclude from the FRC football team the African American student

11  athletes that Plaintiff had recruited.  Plaintiff believed that

12  this decision was made based on the students' race.  Plaintiff

13  alleges that when he tried to advocate for the excluded student

14  athletes, Johnson swore and yelled at him.  Trueblood then

15  allegedly instructed Plaintiff to deceive the excluded players so

16  that they would pay their dorm and registration fees, not knowing

17  they would not be allowed to play football.  Plaintiff also alleges

18  that he was excluded from football department meetings, moved away

19  from the other coaching staff to a small office in a janitor's

20  closet, threatened with bad performance reviews, and falsely

21  reported to the California College Athletic Commission.  These

22  actions, coupled with previous failure to promote and previous

23  complaints that Plaintiff had made regarding racism against African

24  American student athletes he recruited, form the basis of

25  Plaintiff's claim.  Plaintiff alleges that his race and color, and

26  his complaints about unfair discriminatory treatment in the

27  workplace were the motivating factors in defendants' decision to

28  force him out of his job.  Plaintiff suffered anxiety and emotional

1  and physical distress.  While on Family Medical Leave Act ("FMLA")

2  leave in fall 2010, Plaintiff resigned from FRC.  Thereafter, he

3  filed a discrimination complaint with the Equal Employment

4  Opportunity Commission ("EEOC").

5       Defendants argue that Plaintiff has failed to plead facts

6  supporting a claim of constructive discharge.  Defendants argue

7  that Plaintiff was not demoted, that the FAC does not describe how

8  his coaching responsibilities changed, and that being moved to a

9  different office does not trigger a constructive discharge claim.

10 Defendants contend that the FAC shows that Plaintiff was

11 dissatisfied with his job and angry about not being selected as

12 Head Coach, but that such dissatisfaction does not support a

13 constructive discharge claim.  Defendants note that the bar for

14 constructive discharge is a high bar, because federal

15 antidiscrimination policies are better served when the employee and

16 employer attack discrimination within their existing employment

17 relationship, rather than when the employee walks away and then

18 later litigates whether his employment situation was intolerable.

19 See Poland, 494 F.3d at 1184.

20      At this early stage in the pleadings, the Court must take the

21 facts alleged in the FAC as true, and construe them in the light

22 most favorable to Plaintiff.  Plaintiff has plead that the actions

23 against him were racially motivated, that he was yelled at and

24 ostracized from the football department, and that his working

25 conditions became intolerable.  The FAC pleads sufficient

26 allegations to support his claim for constructive discharge.

27 Accordingly, the motion to dismiss the first claim for relief is

28 DENIED.

1

2        2. <u>Second Claim for Relief: Failure to Promote, 42 U.S.C.</u>

3          <u>§ 1981</u>

4      Plaintiff brings a claim for failure to promote in violation

5 of 42 U.S.C. § 1981, against defendant Trueblood.  Plaintiff

6 alleges that he was passed over for promotion to head coach,

7 despite having superior qualifications to those of the person

8 ultimately selected for the job.  As a member of a protected class

9 (African American), Plaintiff alleges that he was not promoted due

10 to his race, and instead a white person was hired (first

11 Mooshagian, then Johnson).  The FAC alleges that Trueblood

12 participated in the decision not to promote Plaintiff, and

13 cultivated a culture where discrimination against African Americans

14 was allowed.

15      The standards articulated under Title VII govern employment

16 discrimination claims brought pursuant to Section 1981.  <u>Martinez</u>

17 <u>v. Marin Sanitary Service</u>, 349 F.Supp.2d 1234, 1256 (N.D. Cal.

18 2004).  Title VII provides that all personnel decisions affecting

19 employees or applicants for employment . . . shall be made free

20 from any discrimination based on race.  . . .  42. U.S.C § 2000e-

21 16(a).  <u>Martinez</u>, 349 F.Supp.2d at 1256.  Plaintiff must make a

22 prima facie showing of the elements of a failure to promote claim

23 under Section 1981, which are: (1) That Plaintiff belongs to a

24 protected class, (2) that he was qualified for the employment

25 position for which he applied; (3) that he was subject to adverse

26 employment actions (i.e., he was not promoted); and (4) similarly

27 situated individuals who did not belong to plaintiff's protected

28 class were treated more favorably.  <u>Id.</u> at 1257 (internal citations

omitted).

The FAC describes two incidences in which Plaintiff was passed up for promotion to Head Coach, once when Mooshagian was hired, and once when defendant Johnson was hired.  In both cases, Plaintiff has alleged that he is a member of a protected class (African American), that he was qualified for the job of Head Coach, and that the candidate who was ultimately hired in both cases was a white male with lesser qualifications.  Accordingly, Plaintiff has alleged a prima facie case of discriminatory failure to promote. Defendant Trueblood argues that Plaintiff was not discriminated against and passed up for promotion based on his race, but rather he was the lesser qualified candidate for the job.  Trueblood further argues that the FAC does not plead any facts showing racial animus by Trueblood or anyone on the hiring committee.  The FAC notes that Trueblood was not on the hiring committee that chose Mooshagian, however, he was on the hiring committee that selected Johnson.  The FAC states that Plaintiff's race and color, and his complaints about unfair discriminatory treatment in the workplace on behalf of himself and African American student athletes motivated Trueblood's decision not to promote him to head coach. The FAC further alleges that Trueblood was overheard stating that Plaintiff would never be head coach because of the players he was recruiting, which Plaintiff asserts referred to Plaintiff's recruitment of African Americans.

As previously discussed, the Court must accept the allegations of the FAC as true and draw all inferences in favor of Plaintiff. Trueblood's arguments that Plaintiff was actually the lesser qualified candidate, or that race discrimination was not a factor

10

1  in hiring, are more appropriate for a summary judgment motion than
2  a motion to dismiss.  Accordingly, Defendants' motion to dismiss
3  the second claim for relief is DENIED.

4          3. <u>Third Claim for Relief: Retaliation, 42 U.S.C. § 1981</u>.

5      Plaintiff brings a claim for relief against Trueblood and
6  Johnson, alleging that they retaliated against him for complaining
7  of racially motivated violations of the rights of African American
8  student athletes.  The FAC alleges sixteen actions which Plaintiff
9  asserts occurred as retaliation for his complaints.  See FAC pp.
10 36-38.  These actions include demotion, threats of discipline,
11 exclusion from the football program, refusal to accept Plaintiff's
12 recruits for the football team, and compulsion to work in a
13 racially hostile environment.

14     To make out prima facie case of retaliation, Plaintiff must
15 establish that: (1) he engaged in a protected activity, such as the
16 filing of a complaint alleging racial discrimination (or was
17 involved in opposition of an unlawful employment practice),
18 (2) defendant subjected him to an adverse employment action, and
19 (3) a causal link exists between the protected activity and the
20 adverse action.  <u>Manatt v. Bank of America, NA,</u> 339 F.3d 792, 800
21 (9th Cir. 2003); <u>Freitag v. Ayers</u>, 468 F.3d 528, 541 (9th Cir.
22 2006).  With respect to the first element, "opposition clause
23 protection will be accorded whenever the opposition is based on a
24 reasonable belief that the employer has engaged in an unlawful
25 employment practice."  <u>Freitag</u>, 468 F.3d at 541.  Additionally,
26 "when an employee protests the actions of a supervisor such
27 opposition is also protected activity."  <u>Trent v. Valley Elec.</u>
28 <u>Ass'n</u>, 41 F.3d 524, 526 (9th Cir. 1994).  An employment action

1  qualifies as adverse "if it is reasonably likely to deter employees

2  from engaging in protected activity." Ray v. Henderson, 217 F.3d

3  1243 (9th Cir. 2000).  Under this standard, "[t]ransfers of job

4  duties and undeserved performance ratings, if proven, would

5  constitute adverse employment decisions" as well as exclusions from

6  meetings.  Id. at 1241.  However, there must be some adverse effect

7  on the employee's work or status.  Id.  The inquiry is objective:

8  whether a reasonable person in the same situation would view the

9  action as disadvantageous.  Otherwise, every minor employment

10  action that an employee did not like could become the basis of a

11  discrimination suit.  Vasquez v. County of L.A., 307 F.3d 884, 881

12  (9th Cir. 2002).  Causation "may be inferred from proximity in time

13  between the protected action and the allegedly retaliatory

14  employment decision." Ray, 217 F.3d at 1244 (internal quotations

15  omitted).  There is no bright line amount of time necessary to

16  establish a causal connection in a retaliation claim.  See

17  Coszalter v. City of Salem, 320 F.3d 968, 977-978 (9th Cir. 2003)

18  (court rejected a bright line rule for establishing causation and

19  found that three to eight months is within a time range that can

20  support an inference of retaliation).

21      Defendants argue that Plaintiff's claim fails because it lacks

22  allegations that he participated in a protected activity and that

23  he suffered an adverse employment action, and because it does not

24  show a causal link between the alleged protected activity and the

25  alleged adverse employment action.  As to the first prong, whether

26  Plaintiff engaged in a protected activity, Defendants argue that

27  making complaints to other employees and supervisors about the

28  treatment of student athletes does not constitute a protected

1  activity.  Defendants also argue that Plaintiff's complaints

2  regarding treatment of the athletes were part of his job and

3  therefore not a protected activity.  Moreover, Defendants argue

4  that in order for Plaintiff's complaints about the treatment of

5  others to be protected by Section 1981, such complaints would have

6  to be regarding unlawful employment actions against others, as

7  Section 1981 specifically protects the right to make and enforce

8  contracts.  Since none of the student athletes are employees,

9  Defendants contend that even if Plaintiff's complaints regarding

10 their treatment constituted a protected activity, this is not

11 protected by section 1981 because Plaintiff is not complaining

12 about unlawful employment practices.

13      Plaintiff states that he engaged in a protected activity when

14 he complained to FRC officials and to human resources regarding

15 racial discrimination toward African-American student athletes.

16 Plaintiff states that in protesting the racial discrimination of

17 the students, he was also asserting his right to be free from

18 racial hostility in his work environment.  Additionally, Plaintiff

19 states that he complained not only about the conduct of certain

20 individuals, but also about the supervisors who refused to remedy

21 the racial hostility.  Viewing the facts in the light most

22 favorable to the Plaintiff, the Court can infer that Plaintiff

23 reasonably believed he was engaging in a protected activity.

24      To establish the second element of retaliation Plaintiff must

25 plead facts showing that he suffered an adverse employment action.

26 Plaintiff states that he was demoted, rejected for promotion, and

27 isolated and excluded in his workplace with diminished job

28 responsibilities as a result of his participation in the protected

13

activity.  Defendants argue that Plaintiff has failed to plead facts showing adverse employments actions under Federal law. Specifically, Defendants argue that facts showing that Plaintiff was ignored by other coaches, moved to a different office, told he had performance issues, and told to call recruits and tell them they may not be invited to play football all do not constitute adverse employment actions.  However, the Court may not delve into this factual dispute or the parties' disagreement over the conclusions to be drawn from the facts that have been pled. Such an inquiry is better suited to summary judgment. Plaintiff has pled sufficient facts to support this element of his claim at this stage.

The final element of retaliation is causation.  Defendant FRC argues that Plaintiff failed to plead facts showing that there was a causal connection between his complaints and any alleged retaliatory conduct that occurred.  Plaintiff asserts that there is a causal link in time between his protected activity and the adverse employment actions he suffered.  He began complaining in 2007, and complained throughout the 2009/2010 school year and into July 2010, while the adverse actions were ongoing.  Defendants argue that the period between when Plaintiff initially complained and the alleged retaliatory conduct is too attenuated to establish a causal connection.  Because Plaintiff has plead an ongoing series of complaints and adverse actions, there is a sufficient basis for the Court to infer a causal link, and for Plaintiff to maintain his claim for retaliation.  Accordingly, the Court DENIES the motion to dismiss the third claim for relief.

        4. <u>Fourth Claim for Relief: Constructive Discharge, Title
        VII, 42 U.S.C. § 2000e, et seq.</u>

     Plaintiff brings a claim for constructive discharge under
Title VII of the Civil Rights Act of 1964, against defendant FRC.
Plaintiff alleges that his workplace became such a racially hostile
and intolerable environment that he could not remain on the job.
Plaintiff left on FMLA leave on August 4, 2010, and resigned while
on leave.  Defendant FRC argues that Plaintiff fails to state a
claim for constructive discharge because the FAC lacks allegations
that Plaintiff's allegedly intolerable working conditions were
known to FRC.  Moreover, FRC argues that none of the allegations
proffered by Plaintiff regarding his working conditions are
sufficient to trigger a claim of constructive discharge.

     As previously noted, Title VII and Section 1981 are analyzed
under the same standards.  As discussed in relation to Plaintiff's
constructive discharge claim under Section 1981, Plaintiff has
plead sufficient facts at this stage to maintain his claim for
constructive discharge.  Accordingly, the motion to dismiss the
fourth claim for relief is DENIED.

        5. <u>Fifth Claim for Relief: Failure to Promote, Title VII</u>
     Plaintiff brings a claim for discriminatory failure to promote
in violation of Title VII, against FRC.  As with his failure to
promote claim under Section 1981, Plaintiff alleges that while
working at FRC he was twice passed up for promotion to head coach,
despite being the better qualified candidate, and the job was
instead given to a white candidate.  Plaintiff alleges that FRC
participated in the decision not to promote him, and cultivated a
culture where discrimination against African Americans was allowed.

1  FRC argues that Plaintiff was not the more qualified candidate, and

2  that the FAC fails to show that Plaintiff was not hired as the Head

3  Coach due to his race.  For the same reasons as this Court denied

4  the motion to dismiss Plaintiff's Section 1981 claim for failure to

5  promote, this Court also DENIES Defendants' motion to dismiss

6  Plaintiff's Title VII failure to promote claim.

7           6. <u>Sixth Claim for Relief: Retaliation, Title VII</u>

8          Plaintiff brings a claim of retaliation pursuant to Title VII,

9  against defendant FRC.  Plaintiff alleges that FRC retaliated

10 against him because he complained of racial discrimination against

11 himself and African American student athletes.  Plaintiff alleges

12 that FRC cultivated a culture in which discrimination against

13 African Americans became the norm, and that following his

14 complaint, he lost a promotion, was forced out of the football

15 department, demoted, ostracized and constructively discharged.  FRC

16 contends that Plaintiff was not engaged in a protected activity,

17 and that Plaintiff did not complain that anyone was discriminating

18 against him, until he quit his job and filed an EEOC complaint.

19 FRC asserts that Plaintiff's complaints regarding alleged

20 discrimination against students was simply part of his job

21 responsibility.  Further, FRC argues that Plaintiff did not suffer

22 an adverse employment action.

23         The elements of a Title VII retaliation are the same as the

24 elements for a 1981 retaliation claim, and this Court's analysis of

25 the Title VII retaliation claim is the same as its analysis of the

26 Section 1981 retaliation claim.  Accordingly, the motion to dismiss

27 this claim is likewise DENIED.

28

1
2

      7. <u>Seventh Claim for Relief: Racially Hostile Work Environment, Title VI, 42 U.S.C. § 2000d</u>

3      Plaintiff's seventh claim for relief is a Title VI hostile

4 work environment claim against FRC.  The FAC states that Plaintiff

5 suffered retaliation and harassment after he acted to protect the

6 rights of African American student athletes, and was subjected to

7 working conditions that were permeated with racial hostility,

8 antagonism, mistreatment and humiliation towards African American

9 students and towards him.

10      Title VI prescribes that "[n]o person in the United States

11 shall, on the ground of race, color, or national origin, be

12 excluded from participation in, be denied the benefits of, or be

13 subjected to discrimination under any program or activity receiving

14 Federal financial assistance."  42 U.S.C. § 2000d.  "To state a

15 claim for damages under Title VI, plaintiff must allege that

16 (1) the defendant entity involved is engaging in racial

17 discrimination; and (2) the entity involved is receiving federal

18 financial assistance.  Although the Plaintiff must prove intent at

19 trial, it need not be pled in the complaint." <u>Fobbs v. Holy Cross

20 Health Sys. Corp.</u>, 29 F.3d 1439, 1447 (9th Cir. 1994), <u>overruled on

21 other grounds by Daviton v. Columbia/HCA Healthcare Corp.,</u> 241 F.3d

22 1131 (9th Cir. 2001).

23      As a threshold matter, FRC argues that Plaintiff does not have

24 standing to bring a Title VI claim and that Plaintiff has not pled

25 facts showing that he suffered an injury because he was denied

26 Federal funds or that the objective of the Federal funds was to

27 provide employment.  However, courts have upheld standing where an

28 individual was not the direct target of discrimination. <u>See</u> <u>Clemes</u>

1  v. Del Norte County Unified Sch. Dist., 843 F.Supp. 583 (N.D. Cal.

2  1994) (court upheld standing for a white male teacher who alleged

3  retaliation for his conduct in acting to protect the rights of

4  Native American and female students).  Therefore, Plaintiff has

5  standing to bring the Title VI claim, even to the extent that he

6  was not the direct target of all instances of racial

7  discrimination.

8       FRC also argues that Plaintiff has failed to plead facts

9  showing that he was deprived access to the educational benefits or

10 opportunities provided by the District.  However, Title VI does not

11 require a plaintiff to plead that he was an intended beneficiary of

12 the federally funded program.  See Fobbs, 29 F.3d at 1447.   To

13 plead a Title VI claim, Plaintiff need only show that FRC received

14 Federal financial assistance.  Id.  Here, Plaintiff states that FRC

15 receives Federal financial assistance for many of its programs (FAC

16 ¶ 115).  Therefore, the funding prong of a Title VI claim has been

17 satisfied.

18      Additionally, FRC raises the argument in a footnote that Title

19 VI restricts claims of employment discrimination to instances where

20 the primary objective of the financial assistance is to provide

21 employment.  See 42 U.S.C. § 2000d-3 ("Nothing contained in this

22 subchapter shall be construed to authorize action under this

23 subchapter by any department or agency with respect to any

24 employment practice of any employer, employment agency, or labor

25 organization except where a primary objective of the Federal

26 financial assistance is to provide employment.").  "Accordingly, in

27 order to state a claim for employment discrimination under Title

28 VI, a plaintiff must allege and prove that the defendant received

federal financial assistance, the primary object of which was to provide employment, and that the funds went to discriminatory programs or activities." <u>Gao v. Hawaii Dep't. of the Attorney General</u>, 2010 WL 99355, *5 (D. Hawaii, Jan. 12, 2010) aff'd, 2011 WL 1097751 (9th Cir. 2011).

The caption of Plaintiff's seventh claim for relief states that it is a hostile work environment claim.  The body of the claim states that Plaintiff suffered from retaliation and harassment for aligning himself with members of a protected class and for being a member of a protected class.  Defendants attack the claim as failing to state a claim for retaliation, and failing to state a claim for harassment.

The Court finds that the basis of the claim is unclear from the allegations of the FAC.  The convoluted claim includes allegations of retaliation and harassment against Plaintiff, allegations of a hostile work environment towards Plaintiff, and allegations of the denial of educational benefits to students. While Plaintiff alleges that FRC receives federal funds, the claim does not include allegations that the primary objective of the federal funds received is to provide employment.  As pled, Plaintiff has failed to state a claim under Title VI.  Accordingly, the motion to dismiss the Title VI claim is GRANTED, WITH LEAVE TO AMEND.

### 8. Eighth Claim for Relief: 42 U.S.C. § 1983

Plaintiff brings a claim for violation of the Fourteenth Amendment equal protection clause, pursuant to 42 U.S.C. § 1983, against Trueblood and Johnson.  Plaintiff withdrew his § 1983 claim against FRC.  The FAC states that Plaintiff became the target of

discriminatory conduct depriving him of his constitutional rights when he offered to protect the African American student athletes from racial discrimination.  Plaintiff also states that he has pled facts showing intentional acts of discrimination against him and the students he sought to protect.

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr, Inc. 473 U.S. 432, 439 (1985) (internal citations omitted).  To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff "must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist., 2009 WL 1748793, at *8 (E.D. Cal. Jan. 18, 2009).  A plaintiff may satisfy this showing by alleging four separate elements: (1) that the defendants treated plaintiff differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification.  Id.

Defendants argue that Plaintiff was aware that Mooshagian's and Johnson's credentials were superior to Plaintiff's credentials. However, this is a factual dispute and in a motion to dismiss the court accepts Plaintiff's factual allegations as true.

20

1   Additionally, Defendants argue that Plaintiff has not pled facts

2   showing that Johnson and Trueblood engaged in intentional acts of

3   discrimination against the Plaintiff based on his race.  Plaintiff

4   contends that the FAC is replete with examples of race-based

5   discrimination against Plaintiff, and includes allegations of

6   retaliation for aligning himself with other African Americans.  At

7   this stage of the pleadings, Plaintiff has raised sufficient

8   allegations for this Court to infer that Plaintiff was

9   discriminated against on the basis of his race.  Accordingly, the

10  motion to dismiss Plaintiff's equal protection claim against

11  Johnson and Trueblood is DENIED.

12        D.    <u>Motion to Strike</u>

13              Rule 12(f) provides in pertinent part that
                the Court may order stricken from any
14              pleading any insufficient defense or any
                redundant, immaterial, impertinent, or
15              scandalous matter . . . Motions to strike
                are disfavored an infrequently granted.  A
16              motion to strike should not be granted
                unless it is clear that the matter to be
17              stricken could have no possible bearing on
                the subject matter of the litigation.
18

19  <u>Bassett v. Ruggles et al.</u>, 2009 WL 2982895 at *24(E.D. Cal. Sept.

20  14, 2009) (internal citations omitted).

21        Defendants' motion to strike alleges that numerous allegations

22  in the FAC should be stricken because they are redundant,

23  immaterial, impertinent or scandalous (specifically, Defendants

24  seek to strike allegations of discrimination against students,

25  allegations applauding Plaintiff' s coaching qualifications, and

26  allegations  of discriminatory motives).  Defendants also argue

27  that allegations regarding Trueblood's communication with the

28  California Community College Athletic Association ("CCAA") must be

stricken pursuant to the *Noerr-Pennington* doctrine.  Lastly,
Defendants assert allegations in the FAC relating to punitive
damages should be stricken as insufficient, and allegations of
discrimination outside of the Title VII statute of limitations
should be stricken.  Plaintiff opposes the motion to strike,
arguing that the complaint to the CCAA was a sham complaint not
protected by the *Noerr-Pennington* doctrine, and that allegations
outside the statute of limitations are still relevant to the FAC,
as are the other allegations that Defendants seek to strike.

As noted above, motions to strike are disfavored and
infrequently granted.  Defendants' challenge to the sufficiency of
Plaintiff's allegations have been discussed and ruled on by the
Court in addressing the motion to dismiss.  While the FAC is very
long and contains numerous allegations, at this stage of the
pleadings the Court must take these allegations as true.  Many of
the allegations may later prove relevant to the claims and to
damages.  Accordingly, the Court denies Defendants' motion to
strike any of the allegations pertaining to the treatment of- or
discrimination against- African American student athletes,
Plaintiff's descriptions of himself and his job qualifications,
letters of recommendations and statements made to Plaintiff
regarding his suitability to be a head coach, Defendants' possible
intent or motivation, or the prayer for punitive damages.
Likewise, the Court will not strike the allegations of events that
occurred outside of the statute of limitations for Title VII, as
these allegations may be relevant to assessing liability for later
events within the statute of limitations.  See National R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).  Lastly, as

1   the Court takes the allegations of the FAC as true, at this stage

2   of the pleadings the Court takes as true Plaintiff's allegations

3   that the complaint to the CCAA was a sham complaint, and the Court

4   will not strike the CCAA allegations as protected by the *Noerr-*

5   *Penington* doctrine.  See, e.g., <u>Kearney v. Foley & Lardner, LLP</u>,

6   590 F.3d 638, 644 (9th Cir. 2009) (petitioning is not protected

7   where the petitioning is merely a sham).  Accordingly, Defendants'

8   motion to strike is DENIED.

9

10                          III. ORDER

11       Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN

12   PART.  The motion to dismiss claims one, two, three, four, five,

13   six, and eight is DENIED.  The motion to dismiss claim seven is

14   GRANTED, with leave to amend.

15       The Motion to Strike is DENIED.

16       Plaintiff must file a Second Amended Complaint within twenty

17   (20) days of the date of this ORDER.

18

19       IT IS SO ORDERED.

20   Dated: May 2, 2011

21                                   JOHN A. MENDEZ,
                                     UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28